Núm. 4.—PUEBLO, querellante, *v.* SOUTH P. R. SUGAR CO. OF NEW JERSEY, ETC., dmdadas.—Original *Quo Warranto.* Dic. 15, 1942.

(Por la Corte, a propuesta del Juez Asociado Sr. De Jesús.)

Vista la sentencia por consentimiento sometida a esta Corte en ᾽diciembre 3 de 1942 por los abogados de las partes en este procedi᾽ miento, la cual dice así:

### "CONSENT DECREE

The People of Puerto Rico filed its petition herein on November, 1938, and defendants having appeared by counsel, The People of Puerto Rico, by the Attorney General and associated counsel have moved the Court for a judgment, defendants consenting to the entry of this Decree without contest.

WHEREFORE it is ORDERED, ADJUDGED AND DECREED as follows:

1. Defendant South Porto Rico Sugar Company (of New Jersey) shall hereinafter be referred to as 'the New Jersey corporation'. Defendant South Porto Rico Sugar Company (of Puerto Rico) shall hereinafter be referred to as 'the domestic corporation'. And defendant Russell & Company, Sucrs., shall hereinafter be referred to as 'the defendant partnership'. That the court has jurisdiction of this proceeding and of all parties hereto and that the information states a cause of action against defendants under (1) Section 3 of the Joint Resolution of the Congress of the United States approved May 1, 1900 (48 USCA 752); (2) under Section 4 of the law referring to private corporations enacted by the Legislature of Puerto Rico on March 9, 1911; and (3) under Law No. 47 approved by the Legislature of Puerto Rico on August 7, 1935. By consenting to the entry of this Decree none of the defendants admits, save for purposes of this Decree only, any allegations, statement of fact or conclusion of law contained in the petition herein.

2. That the defendant partnership shall divest itself of all the lands and other properties it now owns (except the properties listed in Exhibit A attached hereto, which are reserved by the defendant partnership to be sold or otherwise disposed of to persons or entities other than the Land Authority of Puerto Rico) by selling the said lands under the terms below, together with the plantings thereon, as determined in Section 3 of this decree, betterments, buildings, fences and constructions of all kinds, agricultural and farming equipment, live stock, irrigation systems, pumping stations, transmission lines and other property and property rights, real and personal of every kind, as a unit (but not including cash, receivables or other intangibles), to the Land Authority of Puerto Rico, established by Section 2 of Act 26 approved by the Legislature of Puerto Rico on April 12, 1941. All of the said property and property rights shall be sold by the defendant partnership to the Land Authority, as aforesaid, free of any

ens and encumbrances, excepting existing easements, licenses, rights of way and ncumbrances of similar character and excepting encumbrances of record other han mortgages.

The Land Authority, under the powers conferred upon it by the above mentioned law, shall, subject to the next succeeding paragraph of this Paragraph umbered 2, pay to the defendant partnership, in cash, an amount equal to the air value of the lands, plantations, betterments, buildings, fences and construc- ions of all kinds, agricultural and farming equipment, irrigation system, live- tock, pumping stations, power transmission lines, and all other property and roperty rights of every kind whatsoever, to be sold and conveyed hereunder to the Land Authority by the defendant partnership, and the said fair value hall be fixed and determined upon jointly by the Land Authority and the de- endant partnership, after due appraisal within six months after the notice of ection below specified shall have been given. With respect, however, to such arcel or parcels of land and such item or items of other property as to the air value of which the Land Authority and the defendant partnership shall fail to reach an agreement within the aforesaid period, the fair value thereof shall, ithin a period commencing six months after the notice of election below pecified shall have been given and ending twelve months after the giving of uch notice, be fixed and determined by two appraisers, one to be appointed by he Land Authority and the other to be appointed by the defendant partnership, nd their determination shall be final and binding upon the parties. Each party hall pay the compensation of the appraiser appointed by him. With respect to such parcel or parcels of land and such item or items of other property the air value of which has not been fixed and determined during the above men- oned periods either by agreement between the Land Authority and the defend- nt partnership, or by determination of the appraisers appointed as aforesaid, uch fair value shall be fixed and determined by this Supreme Court of Puerto ico as an incident or part of this proceeding or case, in accordance with the rovisions of Section 6 of an Act entitled 'An Act Establishing Quo Warranto roceedings', approved March 1, 1902, as amended by Act No. 47 of the Leg- lature of Puerto Rico approved August 7, 1935, and after receiving evidence om the parties in respect thereof.

Anything hereinabove to the contrary notwithstanding, it is further ordered, djudged and decreed that with respect to all parcels of land now under irriga- on, the fair value of such lands shall be estimated taking into consideration he value increment due to the fact that said lands have water rights appurte- ant or are now receiving the benefits of irrigation.

The purchase price of the property to be sold determined as aforesaid shall e paid in cash by the Land Authority to the defendant partnership, upon the assing of title.

The Land Authority shall have the right to purchase all (but not part) of he above mentioned properties for the just value thereof determined as aforesaid ithin a period of not to exceed three years from the date of this Decree, or ithin such additional time as the parties may agree upon during which time the nds shall not be sold or encumbered by the defendant partnership to any other erson or entity; provided, however, that during said time the defendant part- ership may constitute crop liens on the standing cane and on the products thereof or the purpose of raising and borrowing such sums of money as may from time

to time be necessary for the proper cultivation and exploitation of the lands, an for such purposes said defendant may give crop liens as security for such loan It is understood, however, that nothing herein contained shall relieve the defen ant partnership from the obligation incurred under the terms of this Decree sell, free and clear from all encumbrances, except as hereinbefore set out, all the property to be sold to the said Land Authority as provided in this Decree.

The Land Authority shall exercise its rights to purchase by first givin notice in writing of its election so to do addressed to the defendant partnershi and delivered to a General Partner of defendant partnership, or to its attorney Hartzell, Kelley & Hartzell, in San Juan, Puerto Rico, or to such other attorn or attorneys as the defendant partnership may designate by giving written noti of such designation to the Land Authority, and upon the giving of such noti the said Land Authority shall be obligated to purchase the aforesaid lands a equipment at the price which shall be thereafter fixed in the manner abo provided. Title shall be transferred and the purchase price paid within s months after the determination of the price as aforesaid whether or not the e piration of said six months' period is prior to the expiration of the aforesa three-year period.

The quotas under the Agricultural Adjustment Act pertaining to Agricu tural lands owned and leased by the domestic corporation and by the defenda partnership, insofar as the regulations of the Agricultural Adjustment Admini tration or its successor agency permit, shall pass to the Land Authority, i successors and assigns, with the exception of a quota for six hundred (60( tons of sugar which shall be retained by the domestic corporation for tl benefit of any agricultural lands retained for experimental or other purpos by the said domestic corporation as herein provided.

3. That the cane plantings which may be growing on the lands to be so and conveyed by the defendant partnership to the Land Authority at the tin of conveyance shall be purchased by the Land Authority for an amount equ to their fair value determined as aforesaid, *provided* that if title is to l passed between June 1st and November 30th, the Land Authority shall pa to the defendant partnership the actual cost of planting, irrigating, fertilizin cultivation, etc., corresponding to the cane under cultivation for the succeedin two crops and for all existing ratoons on the land which may be economicall cultivated; if title is to be passed between December 1st and May 31st, tl defendant partnership may harvest the then current crop of cane for its ow account and sell the same to any factory and retain all proceeds thereof, field as harvested to be turned over to the Land Authority and the Land Authorit shall pay the defendant partnership its actual cost of planting, irrigation, fe tilizing, cultivation, etc., corresponding to the cane under cultivation for tl next succeeding crop, and for all ratoons on the land, which may be economicall cultivated.

4. The defendant partnership shall not from the date of this Decree, tal any lands under lease nor renew nor extend any existing leases, either b exercising an option or otherwise. At the time title to the lands of the defen ant partnership is passed to the Land Authority, the latter shall have the rigl to take over all the then existing leases according to the terms thereof, assumin all obligations under the same. Subject in each case to the provisions of tl lease, the Land Authority at the time of acquiring any lease-hold interest

he defendant partnership shall purchase the cane plantings and compensate the defendant partnership for the cost of planting, irrigation, fertilizing, cultivation, etc., and for ratoons to the extent and upon the terms and in the manner set forth in paragraph 3 hereof, with regard to lands sold and conveyed to the Land Authority. Any lease not taken over by the Land Authority shall be disposed of by the defendant partnership within one year from the transfer of the properties described in paragraph 2 hereof by the defendant partnership to the Land Authority.

5. The defendant partnership and its partners, agents and employees shall from the date hereof until the properties above mentioned have all been disposed of pursuant to the provisions of this Decree have the right to undertake and continue in any and all agricultural activities as it or they may deem proper and convenient in connection with such lands, subject to no restrictions or limitations other than those specified in this Decree.

6. The domestic corporation shall have the right to continue to operate and maintain as heretofore its sugar factory, railroads, telephone system, wharf, electric transmission lines, water lines and pipe lines including the right to take water through such water and pipe lines as now exercised, water system (including rights of way for same) for industrial purposes and other facilities necessary or convenient for the operation of its sugar factory; and also present rights of way for the passage of railroad tracks through and over the lands to be sold to the Land Authority by the defendant partnership, and shall also have the right to the use and enjoyment of such additional rights of way and easements as may be agreed upon by both the domestic corporation and the Land Authority of Puerto Rico.

The domestic corporation shall limit its operation to the grinding of sugar cane and the manufacture, refining and sale of sugar and by-products and derivatives therefrom and other non-agricultural pursuits, and shall abstain from any agricultural activities in the future except as may be permitted by law.

7. Unless sooner terminated and disposed of as provided in Paragraph 11 herein, this suit and all proceedings thereunder shall be suspended for a period of three years from the date of entry of this Decree. Should the Land Authority not elect to purchase the properties hereinbefore mentioned within a period of three years from the date of this Decree, or within such extension or extensions as may be made, then from and after the expiration of said period or any extension of said period all of the obligations under this Decree shall cease and terminate, and all of the parties to these proceedings shall be returned to the same position that they were in prior to the entry of this Decree, and these proceedings shall continue, as if this Decree had never been entered, without prejudice to any of the parties.

8. That the Land Authority, so far as it may legally do so, shall impose upon itself and all future owners or lessees of said lands the obligation and duty of grinding all sugar cane grown and cultivated thereon at the factory now operated by the domestic corporation or by its successors and assigns; and said domestic corporation, its successors and assigns, shall be obligated to grind such cane, it being understood, however, that nothing herein contained shall be construed as imposing upon the Land Authority, or future owners and lessees of the land, the obligation of delivering for grinding canes under an unproductive or confiscatory basis or of imposing upon the domestic corpora-

934

tion, its successors or assigns, the obligation to grind canes under an unproductive or confiscatory basis. It is further understood that nothing herein contained shall be construed as obligating the Land Authority, its successors or assigns to grow cane on the lands which may be sold hereunder or as obligating the domestic corporation, its successors and assigns to continue in the business of manufacturing sugar.

Nothing herein contained shall be intended to imply that the Land Authority, its successors or assigns, may not arrange to grind any part of cane grown on the aforesaid lands at another central, provided that arrangements are made with the domestic corporation whereby an equal amount of cane from outside sources is supplied to the said domestic corporation for grinding under circumstances as to haul and other conditions which shall not be more burdensome to the domestic corporation than those existing with respect to the cane so transferred to such other central. The provision of this paragraph shall not be interpreted as intending to prevent the Land Authority or any governmental agency from requiring the domestic corporation to comply with any valid legislation with respect to zoning, and in such case the Land Authority, its purchasers or lessees, shall not be obligated to grind at the central now operated by the domestic corporation the canes planted on lands which may be assigned to another central in accordance with such zoning law, and in such case the Land Authority, or its purchasers or lessees, shall not answer to the domestic corporation for any damages incurred by reason of not grinding the cane grown on lands assigned to other centrals in accordance with said mill zoning law. All stipulations on this paragraph contained are subject to any valid legislation present or future covering the matters herein referred to.

9. The notice of lis pendens now pending against defendants' lands in the Registry of Property shall be cancelled if and when the defendant partnership sells and disposes of its lands as aforesaid.

10. That no fines, costs or attorney's fees shall be imposed upon or paid by any defendant herein.

11. If and when all the lands and other properties of the defendant partnership described in paragraph 2 of this Decree are sold and transferred to the Land Authority as therein provided, this suit and all controversies and issues involved therein shall be deemed to be finally disposed of by this Consent Decree and this suit will then be deemed ended. Until such time, jurisdiction of this cause is retained by this Court for the purpose of making such other and further orders, consistently with this Decree, as may become necessary.

12. Nothing in this Decree contained shall be deemed to prohibit the transfer by the defendant partnership of the properties listed in Exhibit A to any person or entity whatsoever, including the domestic corporation, but not in violation of law.

13. Consent to the entry of this Decree by the Land Authority shall render all applicable provisions thereof binding upon it, and it shall receive the benefit of all applicable provisions thereof, both to the same extent and in the same manner as if it were an original party to the suit.

14. Nothing herein shall be deemed to prohibit the operation, or liquidation, of any defendant hereto in accordance with law; this provision not being intended to sanction any violation of the provisions of the Organic Act of

Puerto Rico, the Private Corporation Act of Puerto Rico or of the Land Law of Puerto Rico.

15. There must be attached to this Consent Decree as part hereof—

(A) A certified copy of a proper resolution duly approved by the Land Authority of Puerto Rico accepting this Decree;

(B) A certified copy of resolutions duly approved by the directors and partners, respectively, of the New Jersey corporation, the domestic corporation, and the defendant partnership accepting in full the terms of this Decree.

Entry consented to by The People of Puerto Rico this 13 day of November, 1942.

> (Sgd.) M. Rodríguez Ramos,
> Acting Attorney General
> of Puerto Rico.
> (Sgd.) M. Guerra Mondragón,
> Special Assistant.

Entry consented to by the Land Authority of Puerto Rico, this 13 day of November, 1942.

> The Land Authority of Puerto Rico.
> By (sgd.) José Acosta Velarde.

Entry consented to by defendants South Porto Rico Sugar Co. of New Jersey, South Porto Rico Sugar Co. of Puerto Rico and Russell & Co., Sucrs., this 13 day of November, 1942.

> HARTZELL, KELLEY & HARTZELL.
> By (Sgd.) C. R. Hartzell,
> Attorneys for Russell & Co., Sucrs.

> JAMES R. BEVERLEY,
> RYDER PATTEN (sgd.),
> Attorneys for South Porto Rico
> Sugar Co. of New Jersey.

> RYDER PATTEN,
> JAMES R. BEVERLEY,
> R. CASTRO FERNÁNDEZ (Sgd.),
> Attorneys for South Porto Rico
> Sugar Co. of Puerto Rico.

(Sgd.) OSCAR B. FRAZER,
Vice President.
(Sgd.) JAMES R. BEVERLEY,
Vice President.

After signing the above stipulations, the parties have agreed to insert at the end of paragraph 2 of clause 2, page 3 hereof, the following:

> *Provided*, that the appraisal that may be arrived at by the parties hereto shall be submitted in every case, whether an agreement as to value has been reached or not by the said parties, to the final approval of the Supreme Court of Puerto Rico.

HARTZELL, KELLEY & HARTZELL.

By (sgd.) C. R. Hartzell,
Attorneys for Russell & Co. Sucrs.

JAMES R. BEVERLEY,
RYDER PATTEN,

By (sgd.) James R. Beverley,
Attorney for South Porto Rico
Sugar Co. of New Jersey.

(Sgd.) M. Rodríguez Ramos,
Acting Attorney General
of Puerto Rico.

(Sgd.) Miguel Guerra Mondragón,
Special Assistant.

RYDER PATTEN,
JAMES R. BEVERLEY,
R. CASTRO FERNÁNDEZ,

By (sgd.) James R. Beverley,
Attorneys for South Porto
Rico Sugar Co. of Puerto Rico.''

POR CUANTO se han acompañado al ''Consent Decree'' arriba transcrito los siguientes documentos:

1. Exhibit A: Relación de las propiedades pertenecientes a Russell & Co., Sucrs., de las cuales puede disponer libremente dicha sociedad;
2. Copia certificada de la resolución aprobada por la Autoridad de Tierras de Puerto Rico, aceptando dicho ''Consent Decree'';
3. Copia certificada de la resolución aprobada por los directores y socios de South Porto Rico Sugar Co. of New Jersey, aceptando dicho ''Consent Decree'';
4. Copia certificada de la resolución aprobada por los directores y socios de South Porto Rico Sugar Co. of Puerto Rico, aceptando dicho ''Consent Decree'';
5. Original de una carta dirigida por los socios generales y apoderados de Russell & Co., Sucrs., a los abogados Hartzell, Kelley & Hartzell, autorizándoles a firmar dicho ''Consent Decree''.

POR TANTO, vista la anterior estipulación, la Corte la aprueba y dicta sentencia de conformidad con la misma.